IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **HOPE ZISUMBO**,<br><br>Plaintiff,<br>v.<br><br>**CONVERGYS CORP.**, **JOHN PATTON II**, **RYAN MITCHELL**, and **ADRIANA WOLDBERG**,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO AMEND AND DENYING WITHOUT PREJUDICE MOTION FOR SPOLIATION SANCTION AND MOTIONS FOR SUMMARY JUDGMENT**<br><br>1:14-cv-134<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

This case arises from the alleged failure of Defendant Convergys Corporation to inform its former employee, Plaintiff Hope Zisumbo, of her rights regarding health insurance in violation of the Employment Retirement Security Act. This case also arises from Convergys's alleged interference with Zisumbo's rights under the Family Medical Leave Act. Before the court are Convergys's Motion for Spoliation Sanction,[1] Convergys's Motion for Summary Judgment,[2] Zisumbo's Cross Motion for Summary Judgment,[3] and Zisumbo's Motion to Amend her First Amended Complaint.[4] For the reasons given below, the court GRANTS Zisumbo's Motion to Amend her First Amended Complaint and DENIES without prejudice Convergys's Motion for Spoliation Sanction, Convergys's Motion for Summary Judgment, and Zisumbo's Cross Motion for Summary Judgment.

---

[1] Dkt. 60. Defendants Ryan Mitchell and Adriana Woldberg join in the Motion for Spoliation Sanction. *Id.*

[2] Dkt. 61. Defendants Ryan Mitchell and Adriana Woldberg join in the Motion for Summary Judgment. *Id.*

[3] Dkt. 62.

[4] Dkt. 75.

## BACKGROUND

According to the First Amended Complaint, Zisumbo was hospitalized with life-threatening kidney stones on June 24, 2013.[5] Four days later, on June 28, 2013, her supervisor at Convergys terminated her by text message "for medical reasons."[6] Convergys also retroactively terminated her SelectHealth health insurance with an effective termination date of April 30, 2013.[7] Based on these allegations, Zisumbo asserts a claim for unlawful interference with her rights under the Family Medical Leave Act (FMLA).[8] Zisumbo seeks—in addition to other things—the recovery of over $100,000 in medical expenses she believes her health insurance, through Convergys, should have covered.[9]

Based on Convergys's alleged failure to provide her with COBRA notice of her right to continuation coverage for health insurance, Zisumbo also asserted a claim under the Employment Retirement Security Act (ERISA).[10] The court previously dismissed that ERISA claim as time barred.[11] Zisumbo now seeks to amend her First Amended Complaint to add a new ERISA claim based on newly discovered information concerning Convergys's failure to inform Zisumbo of her entitlement to and actual coverage by Aetna Health Insurance.[12]

---

[5] Dkt. 22 at ¶ 14.

[6] *Id.* at ¶ 16.

[7] *Id.* at ¶¶ 21, 33.

[8] *Id.* at ¶¶ 27–40.

[9] *Id.* at ¶¶ 23, 45.

[10] *Id.* at ¶¶ 41–49.

[11] Dkt. 47 at 7–12.

[12] Dkt. 75.

### *Zisumbo received three letters concerning insurance from three separate entities.*

Around the time of her hospitalization, on about June 20, 2013, Zisumbo received a letter from the Aetna Life Insurance Company.[13] That letter, in relevant part, states,

> Welcome to the Aetna Voluntary Plan insurance plan.
>
> Enclosed in your packet are the following:
> - Identification card(s)
> - HIPPA Authorization Form
> - HIPPA Privacy Notice
> - Prescription Mail Order Form
>
> Your employer has enrolled you in the **Benefits Plus Plan** underwritten by Aetna Life Insurance Company.
>
> If you have not yet completed an enrollment form, please see your employer immediately to avoid any delay and/or denial of claims. Your enrollment form specifies eligible dependents you wish to enroll as well as your designated beneficiary for Life benefits.
>
> For questions regarding your premiums or claims, please contact Member Services, toll free, at 1-800-292-3374. Representatives will be available to assist you Monday through Friday from 6 a.m. to 7 p.m. and Saturday and Sunday from 9 a.m. to 11 p.m. Central Time.
>
> DocFind (PPO plan) - To locate participating health care providers, visit, http://www.aetna.com/docfind/custom/aahc/bn or contact the Member Services department.
>
> *Plans underwritten by Aetna Life Insurance Company*[.][14]

Zisumbo received a second letter on about July 8, 2013 from The Boon Group.[15] That two-page letter is titled "General Notice Continuation Coverage Rights."[16] Its "Introduction" provides,

> You are receiving this notice because you have recently become covered under a group health plan (the Plan). This notice contains important information about your right to continuation coverage, which is a temporary

---

[13] Dkt. 79, Ex. A.

[14] *Id.* (emphasis in original).

[15] Dkt. 79, Ex. B.

[16] *Id.*

extension of coverage under the Plan. **This notice generally explains continuation coverage, when it may become available to you and your family, and what you need to do to protect the right to receive it.**

Continuation coverage can become available to you when you would otherwise lose your group health coverage, it can also become available to other members of your family who are covered under the Plan when they would otherwise lose their group health coverage. For additional information about your rights and obligations under the Plan you should review the Plan's Summary Plan Description or contact the Plan Administrator.[17]

About a year after her hospitalization, on about July 11, 2014, Zisumbo received a "Cobra Election Notice" from Convergys.[18] It stated, in relevant part,

> We recently learned that you were not sent notice of your COBRA rights at the time of your Qualifying Event(s).
>
> Enclosed you will find the COBRA notification package (the "COBRA Notice") that you would ordinarily have received at the time of your Qualifying Event(s).
>
> If you elect COBRA coverage, you will be required to pay the premium for the COBRA coverage you elect, retroactive to the start of the coverage. If elected, your COBRA coverage must begin as of the first day of the month after your employment termination date. The maximum period of coverage is 18 months, unless an extension of the COBRA coverage period applies to you.
>
> If you had been able to elect COBRA coverage when you first terminated employment, you would have been required to pay the premium for the COBRA coverage you elected, retroactive to the start of the coverage. Because there has been a delay in providing your COBRA notification, if you now elect retroactive COBRA coverage you will be responsible to pay the same amount of monthly premiums, but you will not be required to pay the retroactive premiums immediately. Instead, you will be allowed to pay the premiums for the months of coverage you elect, on a monthly schedule beginning after you elect the coverage and continuing for the number of months of coverage you elected.
>
> The applicable monthly premium for the Select Health Government Employee option is $485.21 a month.

---

[17] *Id.* (emphasis in original).

[18] Dkt. 79, Ex. C.

The applicable monthly premium for the AETNA Part Time Government Employee option is $466.75 a month.[19]

### *Convergys corrected its Answer No. 5 after a three-year delay.*

During discovery, Zisumbo posed Interrogatory No. 5 asking "when, why, how, and by whom Ms. Zisumbo's health insurance benefits were canceled by Convergys?"[20] In its initial Answer No. 5, Convergys responded,

> Subject to the General Objections, **Convergys responds that Plaintiff ceased fulltime employment on April 28, 2013, which made her ineligible to participate in its health insurance plan.** When Convergys updated Plaintiff's employment status to part-time in its PeopleSoft database, an electronic and automated message was automatically sent to SelectHealth notifying it of the change in Plaintiff's employment status. Thereafter, SelectHealth cancelled Plaintiff's health insurance benefits.[21]

Zisumbo received Convergys's initial Answer No. 5 on March 13, 2015,[22] a couple weeks before the March 31, 2015 cutoff date to amend pleadings.[23]

Convergys served a corrected Answer No. 5 on September 26, 2018.[24] It disclosed for the first time that although Zisumbo's SelectHealth health insurance was only available to full-time Convergys employees, part-time employees were eligible to receive Aetna Health Insurance.[25] Explaining its delay in correcting its initial Answer No. 5, Convergys stated that

---

[19] *Id.*

[20] Dkt. 75, Ex. 1.

[21] *Id.* (emphasis added) (internal citation omitted).

[22] *Id.*

[23] The court doubts the cutoff date to amend pleadings was March 31, 2015 because the Scheduling Order states, "Amended Pleadings due 4/30/2015." Dkt. 15. Both parties, however, agree the cutoff date was March 31, 2015. *See* Dkt. 79 at 3 n.5; Dkt. 82 at 3. Because one month would not meaningfully affect the court's analysis, and because the parties agree to a March 31, 2015 cutoff date, the court assumes the cutoff date was March 31, 2015 for the purposes of this Motion.

[24] Dkt. 75, Ex. 2.

[25] *Id.*

until recently, it did not realize that Zisumbo was eligible for Aetna Health Insurance.[26]

### *The discovery of new evidence continued in October 2018.*

On October 24, 2018, Zisumbo deposed a representative from The Boon Group, which administered Convergys's health insurance plans.[27] The representative testified that not only was Zisumbo eligible for Aetna Health Insurance, she was automatically covered by it, despite never having enrolled.[28] The representative further testified Convergys paid premiums for Zisumbo's coverage.[29] He explained, "the employee has no choice about whether or not to be enrolled. It's funded by employer dollars, so the employer dictates enrollment."[30] When asked if Zisumbo could now get Aetna Health Insurance to cover her medical bills from 2013 if she was unaware that she was covered by the insurance at the time, the representative testified that it was too late.[31]

### *Zisumbo seeks to amend her First Amended Complaint in view of the newly discovered evidence.*

On January 25, 2019, Zisumbo moved to amend her First Amended Complaint.[32] She seeks to add ERISA and negligence claims based on Convergys's alleged failure to notify her about her *entitlement to* and *actual coverage* by Aetna Health Insurance.[33]

---

[26] Dkt. 75, Ex. 3, at 83:19–86:6.

[27] Dkt. 75, Ex. 4.

[28] *Id.* at 11:11–17, 12:7–18.

[29] *Id.* at 10:13–21.

[30] *Id.* at 22:2–5.

[31] *Id.* at 30:10–17.

[32] Dkt. 75.

[33] Dkt. 75, Ex. 5, at ¶¶ 50–64.

**LEGAL STANDARD**

When moving for leave to amend pleadings after the scheduling order deadline has passed, the moving party carries the burden of satisfying Rule 16(b)(4) of the Federal Rules of Civil Procedure.[34] Once the moving party satisfies Rule 16(b)(4), the burden is on the non-moving party under Rule 15(a)(2) to provide a reason why justice does not require amendment.[35] The court begins its analysis with Rule 16(b)(4).

**ANALYSIS**

**I.  Newly discovered evidence serves as good cause for the Proposed Amendment.**

Rule 16(b)(4) provides, "[a] schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4)'s good cause standard "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment."[36] Thus, to establish good cause, Zisumbo must make two separate showings related to her own diligence. First, she must show she had "good cause for failing to move to amend prior to the cutoff date."[37] Second, she must show good cause for the length of time that passed between when she "learn[ed] of the new information warranting amendment and moving to amend."[38]

Zisumbo argues, and the court agrees, that newly discovered evidence serves as good

---

[34] *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

[35] S*ee Foman v. Davis*, 71 U.S. 178, 180 (1962) (citing Fed. R. Civ. P. 15(a)(2)); *MacQueen v. Union Carbide Corp.*, 2014 WL 1338729, at *2 (D. Del. Apr. 1, 2014). *But see Gorsuch*, 771 F.3d at 1240. ("After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard.").

[36] *McCubbin v. Weber Cty.*, 2017 WL 3411910, at *2 (D. Utah Aug. 7, 2017).

[37] *Packers Sanitation Servs., Inc., Ltd. v. Moroni Feed Co.*, 2018 WL 3966281, at *3 (D. Utah Aug. 17, 2018) (quoting *Vivint, Inc. v. N. Star Alarm Servs., LLC*, 2018 WL 3215663, at *1 (D. Utah Feb. 5, 2018)).

[38] *Id.* (quoting *Vivint*, 2018 WL 3215663, at *3).

cause for her failure to move to amend prior to the March 31, 2015 cutoff date to amend pleadings.[39] Zisumbo punctually served Interrogatory No. 5 on Convergys.[40] Convergys served its initial, erroneous, Answer No. 5 on March 13, 2015,[41] a couple weeks before the March 31, 2015 cutoff date to amend pleadings.[42] Convergys corrected its Answer No. 5 three and one-half years later, on September 26, 2018, disclosing for the first time that Zisumbo was *eligible* for Aetna Health Insurance.[43] Thus Convergys's error, not Zisumbo's, delayed the Proposed Amendment. Moreover, Zisumbo did not learn about her *actual coverage* until October 24, 2018, when The Boon Group disclosed that fact.[44] Accordingly, Zisumbo has shown good cause for her failure to move to amend prior to the March 31, 2015 cutoff date to amend pleadings.[45]

Zisumbo has also met her burden under the second good cause prong. The court agrees with Zisumbo that her three month delay—between when she learned of the new information warranting amendment (October 24, 2018) and when she moved to amend (January 25, 2019)—reflects adequate diligence because she used that time to process, research, and draft a motion conveying the legal significance of Convergys's and The Boon Group's admissions.[46] Because she lacked the evidence necessary to seek relief from the Scheduling Order until

---

[39] *See* Dkt. 82 at 3–4.

[40] *See* Dkt. 75, Ex. 1.

[41] *Id.*

[42] *See supra*, note 23.

[43] Dkt. 75, Ex. 2.

[44] *See supra* notes 26–29.

[45] *See Gorsuch*, 771 F.3d at 1240 ("Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed.").

[46] Dkt. 82 at 4.

October 24, 2018, because she lacked that evidence due to Convergys's initially incorrect Answer No. 5, and because she sought leave to amend within three months of receiving complete and correct evidence about the factual basis for her Proposed Amendment, the court concludes Zisumbo has satisfied her Rule 16(b)(4) burden.

Convergys argues otherwise, insisting "the fact underlying her proposed new claims—the existence of an Aetna benefits plan for part-time Convergys employees—has been at [Zisumbo's] fingertips since mid-2013, nearly a year before she filed suit."[47] In other words, Convergys contends a diligent plaintiff would have discovered the factual basis for the Proposed Amendment based on the letters from the Aetna Life Insurance Company, The Boon Group, and Convergys.[48]

The court disagrees. The letters, whether read in insolation or together, are ambiguous.[49] The court cannot conclude a diligent plaintiff parsing the letters should have discovered facts giving rise to Zisumbo's proposed new claims, nor that the letters were sufficient to trigger any duty to further investigate.[50] And the court notes Convergys apparently was also unaware of the relevant information until sometime around September 2018. Accordingly, Zisumbo's receipt of those letters does not alter the court's conclusion that she has shown good cause under Rule 16(b)(4) to modify the Scheduling Order to permit the Proposed Amendment.

---

[47] Dkt. 79 at 4.

[48] *See* Dkt 79 at 4–5.

[49] *See* discussion *infra* at pp. 12–13.

[50] *See infra* note 73.

## II. The Proposed Amendment will advance the interests of justice.

Rule 15(a)(2) directs courts to freely give leave to amend when justice so requires.[51] The Tenth Circuit instructs that justice so requires in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[52]

Here, Convergys marshals three arguments why justice does not require the Proposed Amendment.[53] Convergys argues the Proposed Amendment (1) is futile,[54] (2) is unduly delayed,[55] and (3) would cause undue prejudice.[56] For the same reasons the Proposed Amendment satisfies Rule 16(b)(4)'s good cause requirement, the Proposed Amendment is not unduly delayed.[57] And as explained below, the Proposed Amendment is neither futile, nor will it cause Defendants undue prejudice. Accordingly, the court permits the Proposed Amendment.

### A. The Proposed Amendment is not futile.

"Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed

---

[51] Fed. R. Civ. P. 15(a)(2).

[52] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[53] Dkt. 79 at 5–10.

[54] *Id.* at 6–7.

[55] *Id.* at 8–9.

[56] *Id.* at 9–10.

[57] *See* discussion *supra* at pp. 7–9.

amendment is futile if the complaint, as amended, would be subject to dismissal."[58] "When amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment."[59]

Convergys argues the Proposed Amendment is time barred and therefore futile.[60] Without specifying when the statute of limitations for an ERISA or negligence claim begins, Convergys concludes the six-month contractual limitations period within Zisumbo's employment contract bars both claims.[61] Convergys then addresses why equitable tolling is unavailable.[62]

Zisumbo, in contrast, begins her argument by specifying when the statute of limitations begins for an ERISA claim.[63] She cites 29 U.S.C. § 1113, specifying the statute of limitations for an ERISA claim begins to run "after the earliest date on which the plaintiff had actual knowledge of the breach or violation."[64] She alerts the court to a circuit split concerning what constitutes "actual knowledge."[65] Some circuits require both knowledge of the conduct and

---

[58] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citing *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir.1999)).

[59] *Goston v. Potter,* 2010 WL 4774238, at *5 (N.D.N.Y. Sept. 21, 2010); *see also Zell v. Klingelhafer,* 2014 WL 12656101, at *2 (S.D. Ohio Dec. 3, 2014) ("A court will not ordinarily consider the merits of a proposed amended complaint in ruling on a motion for leave to amend unless it appears to be frivolous. Normally, the merits of a complaint are best resolved through a motion to dismiss or a motion for summary judgment.") (internal citations omitted); *Caiman E. Midstream, LLC v. Hall*, 2012 WL 2046882, at *2 (N.D.W. Va. June 5, 2012) ("Barring a showing that the plaintiff's proposed amendment is obviously frivolous or legally insufficient on its face, considerations of the substantive merits of the plaintiff's claim is not appropriate when considering a motion for leave to amend."); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1478 (3d ed. 2018) ("If a proposed amendment is not clearly futile, then denial of leave to amend is improper.").

[60] Dkt. 79 at 8–9.

[61] *Id.*

[62] *Id.*

[63] Dkt. 82 at 4.

[64] *Id.*

[65] *Id.* at 5.

knowledge "that the conduct is unlawful under ERISA," while others simply require "knowledge of the conduct itself."[66] It appears the Tenth Circuit has not adopted either construction of ERISA's statute of limitations. But, as Zisumbo argues, the court need not adopt an interpretation of "actual knowledge" because under either definition her claim is timely.[67]

Without deciding the issue at this stage, it seems Zisumbo did not know about Convergys's failure to notify her about her entitlement to and coverage by Aetna Health Insurance (i.e., conduct)—let alone know that Convergys's failures were unlawful under ERISA (i.e., conduct plus its unlawfulness under ERISA)—until October 24, 2018.[68] That is the date Zisumbo apparently learned she was actually covered by Aetna Health Insurance during the relevant period.[69] Because she moved to amend her First Amended Complaint on January 25, 2019,[70] within the six-month contractual limitations period for her ERISA claim, her ERISA claim appears timely.

Yet Convergys seems convinced that letters sent in 2013 and 2014 by the Aetna Life Insurance Company, The Boon Group, and Convergys informed Zisumbo of Convergys's failure to notify her about her entitlement to and coverage by Aetna Health Insurance.[71] All three letters are ambiguous, however, and thus did not adequately notify Zisumbo of Convergys's failure.

---

[66] *Compare Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078, 1086 (7th Cir. 1992) (holding a plaintiff "must know the essential facts of the transaction or conduct constituting the violation.") *with Int'l Union v. Murata Eria N.A., Inc.,* 980 F.2d 889, 900 (3rd Cir. 1992) (holding that actual knowledge requires "knowledge of all material facts" and knowledge that an ERISA claim exists).

[67] Dkt. 82 at 4–6.

[68] *See supra* notes 24–31.

[69] *Id.*

[70] Dkt. 75.

[71] *See* Dkt. 79 at 7 ("If Zisumbo believes that Convergys (or The Boon Group) failed in some respect to provide her with adequate information about this coverage, she was aware—or should have been aware—of this failure by mid-2013, in plenty of time to bring her claim before the statute of limitations ran.").

First, the letter from the Aetna Life Insurance Company does not specify the health insurance plan Zisumbo was supposedly enrolled in.[72] Confusingly, that letter often seems to communicate the fact of Zisumbo's enrollment in life insurance, not health insurance.[73] Second, the Notice of Continuation Coverage Rights from The Boon Group makes no mention of Aetna Health Insurance, stating only Zisumbo "recently [became] covered under a group health plan (the Plan)."[74] Third, the COBRA notice from Convergys, sent a year late, indicates the monthly premium for the "AETNA Part Time Government Employee option" without stating that Zisumbo was actually covered by Aetna Health Insurance.[75] Furthermore, that each letter carried a different message from a different source—perhaps even a message inconsistent with those proceeding or succeeding it—impaired whatever informative quality each letter independently possessed. Because it appears the letters failed to adequately inform Zisumbo of Convergys's failure to notify her about her entitlement to and coverage by Aetna Health Insurance, the letters did not trigger the statute of limitations for the proposed ERISA claim. Hence, Zisumbo has raised a colorable claim her ERISA claim is not time barred.

Additionally, Convergys failed to provide legal authority and facts establishing that the proposed negligence claim is time barred. Due to Convergys's failure to carry its Rule 15(a)(2) burden, and in light of the current record, the court determines Zisumbo has raised a colorable

---

[72] Dkt. 79, Ex. A.

[73] *Id.* (referring to "Life benefits" and twice stating the insurance plans are underwritten by "Aetna Life Insurance Company."). This ambiguity also bears on the Rule 16(b)(4) analysis. Convergys argues a diligent plaintiff would resolve any ambiguity in the Aetna Life Insurance letter by calling the 1-800 number provided in that letter. Dkt. 79 at 7 n.11. But a diligent plaintiff, who brought suit for claims relating to health insurance, would not call a 1-800 number to inquire about life insurance.

[74] Dkt. 79, Ex. B.

[75] Dkt. 79, Ex. C.

argument for relief for Convergys's alleged negligence. Accordingly, the court concludes her Proposed Amendment is not futile.

## B. The Proposed Amendment will not cause undue prejudice.

Typically, courts only conclude a party will be unduly prejudiced by an amendment "when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment."[76] Usually, "this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[77]

Here, Zisumbo's Amended Claims arise out of the same events and set of facts as the claims alleged in her original Complaint, as well as her First Amended Complaint.[78] And all of her claims arise out of the last few months of her employment at Convergys, a time period that, at this point, has been the subject of extensive fact discovery. More fundamentally, besides arguing it anticipates delay and discovery-related expenses, Convergys has not shown how the Proposed Amendment would prejudice it in terms of preparing its defense.[79] Accordingly, the court concludes the Proposed Amendment will not cause undue prejudice.

## CONCLUSION

For the reasons given above, the court **GRANTS** Zisumbo's Motion to Amend her First Amended Complaint. Zisumbo must file the Second Amended Complaint attached to her Motion within five (5) days of this Order. The parties are ORDERED to propose an amended scheduling order within seven (7) days of this Order. If they are unable to agree to an amended

---

[76] *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)).

[77] *Id.*

[78] *See* Dkt. 2, Ex. 2; Dkt. 22; Dkt. 75, Ex. 5.

[79] Dkt. 79 at 11–12.

scheduling order, then each party must file a proposed scheduling order within ten (10) days of this Order.

The court concludes the Second Amended Complaint and resulting discovery are likely to bear on the merits of the other Motions before it. For that reason, and in the interest of judicial economy, the court **DENIES** without prejudice Convergys's Motion for Spoliation Sanction, Convergys's Motion for Summary Judgment, and Zisumbo's Cross Motion for Summary Judgment. The parties may refile their Motions drawn to the Second Amended Complaint at the time established in the forthcoming amended scheduling order.

SO ORDERED this **12th** day of March, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge